Cuneo v. Bessoni.

---

## CUNEO v. BESSONI.

INSANE PERSON.—*Inquest of Lunacy.—Judgment.—Appeal to Supreme Court.*—The defendant in a statutory inquest of lunacy may personally appeal to the Supreme Court from a judgment rendered upon a verdict declaring him to be a person of unsound mind.

SAME.—*Testimony of Expert.— Witness.*—The testimony of an expert, in relation to the sanity of a person, should be tested by the same general rules as the testimony of other witnesses.

From the Ripley Circuit Court.

*G. Durbin* and *J. O. Cravens*, Prosecuting Attorney, for appellant.

*W. D. Willson*, *C. H. Willson* and *S. M. Jones*, for appellee.

NIBLACK, J.—Joseph Bessoni filed in the court below a

statement in writing, in the form of a complaint, representing to said court, that Catharine Cuneo, of the county of Ripley, was a person of unsound mind, and incapable of managing her own estate; whereupon a summons was issued to the said Catherine, requiring her to appear and answer such complaint.

In response to such summons the said Catherine appeared in court, and James W. Pate, the clerk of said court, under the direction of the court, filed an answer denying the facts set forth in the complaint.

The issue thus formed was submitted to a jury for trial, and a verdict was returned:

"We, the jury, find, that Catharine Cuneo is a person of unsound mind, and incapable of managing her own estate."

A motion was then made, by and on behalf of the said Catharine, for a new trial, which was overruled.

Judgment having been rendered in accordance with the verdict, one Adam Stockinger was appointed guardian of the person and estate of the said Catharine, and she has appealed to this court, assigning for error the overruling of her motion for a new trial.

The appellee has moved to dismiss the appeal, upon the ground that the record shows the appellant to have been declared a person of unsound mind, and placed under guardianship, and that, hence, she is incapable of prosecuting the appeal in her own name.

It is unquestionably true, as a legal proposition, that a person who has been declared insane, and placed under guardianship, can only prosecute or defend an action by guardian or committee. *Meharry* v. *Meharry*, 59 Ind. 257; *Aldridge* v. *Montgomery*, 9 Ind. 302.

But we can not hold, that a person has been declared of unsound mind so long as the proceeding instituted for the purpose of having him or her so declared remains pending and undisposed of.

The appeal in this case is but a continuation, in another form, of the proceeding against the appellant below, which proceeding was, in its essential characteristics, an adversary proceeding, in which the appellant was the real defendant, the clerk being only required to make an issue on her behalf. 2 R. S. 1876, p. 599, sec. 2; *Melton* v. *The State,* 9 Ind. 452.

We are of the opinion, that an appeal lies to this court from such a proceeding, and that, in this case, the appellant is entitled to prosecute her appeal here, so as to test the regularity of the proceedings by which it is sought to place her under guardianship. We know of no rule which prohibits her from personally contesting her alleged unsoundness of mind, so long as it is an open question.

The appellee's motion to dismiss the appeal can not, therefore, be sustained.

Several witnesses testified on each side upon the trial, and there were material differences between many of the witnesses as to the apparent mental condition of the defendant.

One of the witnesses who testified on behalf of the defendant was a physician who had been acquainted with her for several years, and who had attended her professionally a few months before the time of the trial.

The court, on its own motion, gave the jury a series of instructions. One of the instructions thus given, known as No. 5, was as follows:

" Medical witnesses may testify and give an opinion from a hypothetical case, as, having seen the person, may give an opinion, without detailing or testifying to facts upon what to base the opinion. The opinion of a medical witness may be entitled to more or less weight, depending upon the circumstances. A hypothetical case is a supposed state of facts. Where the attorney, in the form of a question put to the witness, supposes that the per-

son whose condition of mind is unsound did certain things and made certain statements, and asks for his opinion upon the supposed state of facts, this is asking the opinion of the witness upon a hypothetical case.

" The weight to be given to the opinion expressed by the witness depends upon, 1. Whether the hypothetical case is proven; 2. The importance of the supposed state of facts; 3. The experience of the witness in this branch of his profession, and the reasons given for his conclusion.

" If the hypothetical case is not proven, then the opinion based upon it is entitled to no weight. If proven, if the facts are such as to readily indicate to any one—whether a professional or non-professional person—insanity, the opinion of the witness would be entitled to more weight than when it would be more difficult to determine from the supposed case whether the mind is unsound or not. The less experience a professional witness has, and the less satisfactory his reasons for his opinion, the less weight should the opinion have.

" As to all the witnesses, whether medical or not, you are the exclusive judges of the weight to be given to the evidence."

This instruction impresses us as having been hastily written, and not in all respects carefully considered. The precise meaning intended to be conveyed by some portions of it is not to us entirely clear. This doubtless results either from inadvertence or some mistake in copying. But, however that may be, we think the instruction as a whole, laid down too narrow and too inflexible a rule, for the estimation of the weight to be given to the testimony of an expert, and limited too closely the various matters which the jury were entitled to consider while weighing such testimony. It gave too much prominence to the mere experience of the expert, leaving out of view his opportunities, his aptitude, his skill, and other possible qualifications.

It did not leave the jury at liberty to apply the same general rules to the testimony of experts, that were applicable to the testimony of other witnesses, when estimating its value, which was erroneous. *Eggers* v. *Eggers*, 57 Ind. 461.

It is quite apparent to us, that the instruction above quoted was erroneously given, and that, in consequence, the court below erred in refusing to grant the appellant a new trial.

The judgment is reversed, at the costs of the appellee, and the cause remanded for a new trial.