## IN THE MATTER OF THE GUARDIANSHIP OF VICTORIA KATHLEEN WARD, AN INCOMPETENT.

### No. 3037.

ARGUED APRIL 16, 1957.                    DECIDED MAY 31, 1957.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

Lani Booth filed a petition in the circuit court of the first circuit for the appointment of a guardian for her sister, Victoria Kathleen Ward, alleging that Miss Ward was seventy-seven years of age, mentally infirm, unable to manage her business affairs, and non compos mentis; that she has a substantial estate of real and personal property situated within the Territory of Hawaii of a value in excess of $100,000; that it was necessary that a guardian of the

estate and of the person of the incompetent be appointed. Mrs. Booth requested the appointment of the Bishop Trust Company, Limited, as guardian of Miss Ward's estate and herself as guardian of the person of her sister.

Miss Ward's sister, Mellie Hustace, and her nephew, Cenric N. Wodehouse, joined in the petition to have Miss Ward declared incompetent and asked for the appointment of the Bishop Trust Company, Limited, as guardian of the estate.

Proper service was had upon Miss Ward and the court appointed Louis Le Baron as guardian ad litem pursuant to section 12509 of the Revised Laws of Hawaii 1945 and ordered that notice be given to such guardian ad litem by service of copy of the petition for appointment of a guardian of Victoria Kathleen Ward.

Answers were filed on behalf of Victoria Kathleen Ward by her attorney, J. Harold Hughes, and also one by Louis Le Baron, both denying the fact of incompetency. Heen, Kai, Dodge & Lum also appeared as co-counsel for Miss Ward, and Frank W. Hustace, Jr., appeared for Mellie Hustace, a sister, and Delbert E. Metzger appeared as "next friend."

At a hearing, testimony was introduced showing that Victoria Kathleen Ward was old, forgetful, and incompetent to manage her business affairs. The court so found and there was ample evidence to support such finding; however, the court did state that Miss Ward was not insane and did not require the appointment of a guardian of her person.

After the court found Victoria Kathleen Ward was incompetent to manage her business affairs, a hearing was had upon the various nominations made for the appointment as guardian, including the guardian ad litem. There were a number of suggestions and both the attorneys of record for Victoria Kathleen Ward and the guardian ad

litem objected to the appointment of the Bishop Trust Company, Limited, as guardian of the estate and of Lani Booth as guardian of the person.

The guardian ad litem then filed a statement as to his ward's position, stating that from conversations between himself and his ward he was of the opinion that she desired to leave the matter of the appointment of such guardian to the sound judgment and discretion of the court with a view of obtaining the person or persons who will have no interests conflicting with her own and will loyally devote all his abilities to her best interests in the management and care of her estate.

No notice was given to the guardian ad litem as to the time of hearing upon the qualifications of the suggested guardians.

The court appointed as guardians of the property Chinn Ho, Mark Norman Olds and George H. Vicars, Jr.

From this decree Lani Booth, the petitioning sister, appealed to this court on the ground there was an abuse of the court's discretion not to appoint the nominee of the relatives as guardian of the property.

The attorney for the incompetent appealed to this court on the ground the finding of his client's incompetency was error.

The guardian ad litem also appealed on the ground the court abused its discretion in appointing the guardians and committed reversible error in not notifying him of the time of the hearing on the question of the competency of the guardians of the estate.

After the docketing of this case four motions were made relative thereto:

(1)  By the guardian ad litem to vacate the appearance in this court of J. Harold Hughes as attorney for Victoria Kathleen Ward and to dismiss the appeal of Victoria Kathleen Ward;

(2) Motion by Chinn Ho and Mark Norman Olds, as two of the guardians of the estate of Victoria Kathleen Ward, to vacate the appearance of attorneys for the guardian ad litem and to dismiss the appeal of the guardian ad litem;

(3) Motion of J. Harold Hughes as attorney for Victoria Kathleen Ward to dismiss the appearance of J. Garner Anthony as attorney and to dismiss the appeal of Lani Booth;

(4) Motion of J. Harold Hughes to vacate the appearance of Lewis, Buck & Saunders, attorneys for the guardian ad litem, and to dismiss the appeal of the guardian ad litem on the ground that the guardian ad litem was not an aggrieved party, had been dismissed by the circuit judge, and had no appealable interest.

These motions were ruled upon by this court as set forth in 41 Haw. 499.

This court granted the motion of J. Harold Hughes to dismiss the appeal of Lani Booth on the ground that Lani Booth had no appealable interest from the finding and decree of the circuit court that Victoria Kathleen Ward was an incompetent and appointing guardians of her estate.

The attorneys for Lani Booth contended that as section 12509 of the Revised Laws of Hawaii 1945 provides that relatives and friends may initiate such proceedings, therefore any relative or friend so initiating such a proceeding has the right of appeal from the ruling which does not coincide with the wishes of the petitioner.

Section 9503 of the Revised Laws of Hawaii 1945 provides an appeal lies from "all decisions, judgments, orders or decrees of circuit judges in chambers, to the supreme court * * *." From a casual reading of the wording of the statute it might appear that any party to a proceeding would have the right of appeal where the decision is ad-

verse to the contentions of such party. However, our court, as well as the great majority of appellate courts, has added the requirement that the appellant must be an "aggrieved party." The words "aggrieved party" mean that the appellant's property rights must be affected thereby, that mere emotional feelings of dissatisfaction at the decision of the trial judge are not sufficient. (*Hawaiian Trust Co.* v. *Holt,* 24 Haw. 212; *Castle* v. *Irwin,* 25 Haw. 807; *Pires* v. *Pires,* 29 Haw. 849.)

Ordinarily, the only person who may be aggrieved by the decision adjudging a person incompetent is the incompetent himself. The rule with respect to those who are aggrieved by a decision relative to incompetency is set forth in 44 Corpus Juris Secundum, *Insane Persons,* § 33, page 93, at page 95, as follows:

"\* \* \* A person who is adjudged insane or incompetent is a person aggrieved by the order within such statute. The petitioner is not necessarily a person aggrieved unless he can show his rights to be actually affected by the adjudication, and the mere fact that costs are taxed against him does not give him the right to appeal. An expectant heir is not a 'person interested,' or an 'aggrieved person,' entitled to appeal from the adjudication unless it is expressly so provided by statute, and a brother or a sister of the alleged incompetent is not an aggrieved person within the statute merely because of the blood relationship. \* \* \*"

A case similar to the one at bar is *In re Carpenter,* 123 N. W. 144. Under a Wisconsin statute holding "any person aggrieved" may appeal, it was held that a sister who initiated incompetency proceedings was not an aggrieved person under the statute stating that a relative or friend of the alleged incompetent could call such incompetency to the notice of the court. (Citing cases.)

A similar decision is that of *Briard* v. *Goodale*, 86 Me. 100, 29 Atl. 946.

In *Harmon* v. *Harmon*, 206 S. W. 333 (1918), where one sought to have his brother adjudged incompetent, the court held the petitioning brother had no right of appeal. The court stated:

"We are unable to say that the petitioner herein has any legal interest in the controversy. Defendant is an unmarried man about 37 years of age. The petitioner is his brother. Petitioner is under no obligation to support or care for the defendant, nor is the defendant under any such obligation to the petitioner. It can make no difference to petitioner, so far as his legal rights are concerned, if the defendant dissipates his entire estate."

The situation is different where a petitioner is one obligated to support the alleged incompetent or entitled to support from him, as a wife or child. In such case there may be a real interest in the petitioner. This distinction is shown by the case of *Tierney* v. *Tierney*, 81 Neb. 193, 115 N. W. 764, where an appeal was allowed because the appellants were children of the alleged incompetent and dependent upon him for support.

This court denied the motion to vacate the appearance of J. Harold Hughes as attorney for Victoria Kathleen Ward, holding that the incompetent had a right to appeal any finding relative to her competency, but because of the subsequent finding affirming the finding by the probate judge of the incompetence of Victoria Kathleen Ward, this court ruled that the right of J. Harold Hughes to further appear as her attorney was terminated.

While ordinarily one adjudged non compos mentis can only act through a recognized guardian or next friend, "but this is not the case where the very object of the action is to determine the legality of the judgment adjudging him

incapable of managing his own affairs." (*Shapter* v. *Pillar,* 63 Pac. 302, 303.)

"We know of no rule which prohibits her [the person adjudged insane] from personally contesting the alleged unsoundness of mind, so long as it is an open question." (*Cuneo* v. *Bessoni,* 63 Ind. 524 [1874], cited in *Ritter* v. *Ritter,* 38 N. E. [2d] 997.)

"It is well settled that a defendant, against whom there has been a judgment of lunacy in an inquisition held for that purpose, is entitled to appeal." (*Harmon* v. *Harmon, supra.*)

It was held *In re Adams,* 8 Alaska Reports 393 (1933), while the judgment of insanity may not be collaterally attacked, a direct appeal will lie. There are numerous other authorities to the same effect.

The court denied the motions to vacate the appearance of the attorneys for the guardian ad litem and reserved for argument the points properly raised by the appeals and, *inter alia,* the following two questions:

(1) Whether there was reversible error in the failure of the probate judge to notify the guardian ad litem on a hearing held by the probate judge on the qualifications of permanent guardians; and

(2) Whether the present guardian ad litem has assumed an inconsistent position as a candidate for appointment as a permanent guardian and should, therefore, be replaced as guardian ad litem.

To take up the latter question first:

It appears from the record that the guardian ad litem himself was an active candidate for the position of guardian of the estate of his ward, Victoria Kathleen Ward. Under date of May 20, 1955, the guardian ad litem addressed a letter to the judge of the circuit court, the Honorable Albert M. Felix, Third Judge, First Circuit Court, which stated:

"Please allow me to present briefly my qualifications for your consideration in the matter of the appointment of a Guardian for the Estate of Victoria Kathleen Ward, an incompetent person."

He then set forth a sketch of his career in the Territory of Hawaii and the reasons why he could serve as such permanent guardian of the estate.

From the answers to questions put to the guardian ad litem by the court, it further appears that the guardian ad litem had requested Mr. Hughes, attorney for Miss Ward, Mr. Anthony, attorney for Lani Booth, and Frank W. Hustace, Jr., attorney for Mellie Hustace and Mr. Wodehouse, to recommend the guardian ad litem for appointment as a guardian of the estate.

Clearly, the guardian ad litem when he sought the position of guardian of the estate of his ward assumed a position incompatible with his position as guardian ad litem and should have withdrawn or been removed from the latter position. He is an agent acting for his own interests which may be in conflict with those of his ward.

The case of *Prince* v. *Clark,* 81 Mich. 167, at 171, states as follows:

"While the law does not presume bad faith, it does presume that there may be, and hence requires that the infant shall be represented by a discreet and disinterested person * * *."

The *Prince* case quotes, at page 170, from *People* v. *Township Board,* 11 Mich. 225, as follows:

" 'So careful is the law in guarding against the abuse of fiduciary relations, that it will not permit an agent to act for himself and his principal in the same transaction. * * * All such transactions are void, as it respects his principal, unless ratified by him with a full knowledge of all the circumstances. To repudiate them he need not show himself damnified. Whether

he has been or not is immaterial. Actual injury is not the principle the law proceeds on in holding such transactions void. Fidelity in the agent is what is aimed at, and as a means of securing it *the law will not permit the agent to place himself in a situation in which he may be tempted by his own private interest to disregard that of his principal.'* (Emphasis added.)

The *Prince* case continues on page 171:

"*The above reasoning applies with much greater force to the relation of guardian and ward than it does to principal and agent.* It is no sufficient answer in this case to say that the guardian properly protected his ward's interest. His action was in plain violation of the policy of the law." (Emphasis added.)

It is unfortunate that the question of the guardian ad litem's disqualification was not taken up first, but the motion to dismiss the appeal just as a motion to dismiss the appeal of the petitioner was apparently based on the matter of law that such persons had no right to appeal. Of course, as a matter of law the guardian ad litem had the right to appeal and a duty to appeal had he felt the decision did not do justice to his ward.

The second question is answered in the affirmative and the guardian ad litem must be removed.

The next question is whether there was reversible error in the failure of the probate judge to notify the guardian ad litem of the hearing to be held on the qualifications of the nominees for appointment as permanent guardians.

Considerable argument has been made as to whether section 12509 of the Revised Laws of Hawaii on *"Notice, hearing and appointment of guardian of insane person"* as to the provision that "In case it shall appear by return of the summons or by affidavit to the satisfaction of the judge that no such person [husband, wife, parent, or any child or children of the supposed insane person] can be

found, the judge may appoint a guardian ad litem to protect the interest of the supposed insane person and cause such notice to be given to such guardian ad litem" is mandatory and the word "may" should be construed as "must."

In the ruling on the motions, at 41 Haw. 501, we stated that a guardian ad litem's duties continue until the final decision of this court on the question, raised by appeal, of the qualification of a permanent guardian. The statement raises the implication that the presence of a guardian *ad litem* is mandatory on a hearing on the qualification of permanent guardians. However, upon consideration of authorities, we hold that while a guardian ad litem must be appointed and must be present at a hearing on the adjudication of incompetency, the presence of such guardian at a hearing on the qualifications of permanent guardians is not an absolute requisite and therefore the failure of the probate judge to notify such guardian of the hearing is not reversible error.

In *Logue* v. *Fenning,* 29 App. D. C. 519, the court said:

"There is weighty authority for the proposition that when one has been adjudged to be insane and committed to an asylum no additional notice is necessary to the appointment of a committee, unless, of course, it be required by statute. In other words, when the initial proceeding has been had upon notice, it is not required in the various incidental steps thereafter."

To the same effect is *Oster* v. *Meyer,* 113 Ky. 181, 67 S. W. 851. There are numerous cases to the effect that no notice is necessary in cases of appointment of successor guardians. (*In re Hruska,* 230 Iowa 668, 298 N. W. 664 and cases annotated in 138 A. L. R. 1364.)

The conclusion to be arrived at from these cases is that notice to the alleged incompetent and to the guardian ad litem of the hearing on the question of incompetency is

necessary because it is on the adjudication of incompetency that the status of the incompetent is fixed and he is deprived of the control of his property. After such adjudication, the selection of a guardian is a matter which is committed largely to the discretion of the appointing court.

In the present case, a full hearing was had on the qualifications of the proposed guardians at which the incompetent was represented by her own attorney, the petitioner was represented by her attorney, and a nephew and another sister were represented by their attorney. The guardian ad litem, as a candidate for the position, had disqualified himself from making any effective appearance at the hearing on qualifications.

Objections were made by petitioner's attorneys to the appointment of Chinn Ho, Mark Norman Olds and George H. Vicars, Jr., as guardians. One of the objections was that Mark Norman Olds lived in Hilo; a second objection was that Chinn Ho was one of seven directors in a corporation which owned interests in certain lands in which Victoria Ward, Limited (the Ward family corporation), also owned interests, and in dealings between Victoria Ward, Limited, and Chinn Ho's corporation there might be a conflict of interest.

Suffice it to say, it appears that the court gave due weight to all matters urged against the appointments and we cannot say that the court has clearly abused its discretion in making the appointments.

The contention of the petitioner that the nominee of the next of kin must be appointed is without merit. As stated in the decisions, as a general rule courts follow the practice of appointing close relatives as guardians of mental incompetents on the theory that they will be the ones most solicitous of the incompetent's welfare and the ones most likely to rehabilitate him mentally. However, it is not mandatory to appoint the next of kin or his nominee.

(21 A. L. R. [2d] 882.) It further appears that the incompetent had objected to her sister and to the Bishop Trust Company, Limited, the sister's nominee, as her guardians.

Where the next of kin have an adverse interest with the incompetent, their nominee will not be appointed. (*In Re Rothman,* 263 N. Y. 31, 188 N. E. 147; *Re Voshake's Guardianship,* 125 Pa. Super. 98, 189 Atl. 753; *In Re Bothick,* 11 So. 712.) It is needless to review in detail the various fights in the Ward family. The appellant, Lani Booth, has engaged in bitter litigation with her sister, one case being carried to the Court of Appeals for the Ninth Circuit. Appellant Booth admitted that the relationship between herself and her sister, Victoria Kathleen Ward, had not been harmonious for years; she did not visit her sister who lived next door from 1948 until another sister, Lucy, had suffered a stroke; appellant Booth took steps to contest the will of Lucy K. Ward who left her estate to Victoria Kathleen Ward. Another sister, Mellie K. Hustace, had litigation in the circuit court with reference to 632 shares of Victoria Ward, Limited, the family corporation, claiming such shares registered in the names of Lucy K. Ward and Victoria Kathleen Ward rightfully belonged to her. The circuit judge took judicial notice of the pendency of this suit and Frank W. Hustace, grandson of Mellie Hustace, was her attorney in that suit.

In the present situation there is no abuse of the trial judge's discretion in refusing to appoint as guardian the petitioner's nominee.

While the appeals were pending before us, it was made to appear to this court that the incompetent required the services of a guardian of her person and this court appointed a temporary guardian of the person and made certain orders with reference to the maintenance and support of the ward.

Inasmuch as there exists no reversible error, the rulings and orders of the probate judge which were appealed from are affirmed and this matter of the guardianship of Victoria K. Ward, an incompetent, is remanded to the jurisdiction of the judge of the circuit court of the first circuit, presiding at chambers, in probate, with direction that guardianship of the person of the incompetent be continued, either by retention of Millie S. Rawlins, the present temporary guardian, or, at his discretion, the appointment of a new guardian of the person. No further action on replacement of guardian ad litem is necessary in view of the affirmance of the order appointing permanent guardians.

*Louis Le Baron,* guardian ad litem-appellant, in pro persona, and

*William W. Saunders* (*Richard L. Teege* and *Lewis, Buck & Saunders* on opening brief; *Lewis, Buck & Saunders* on other briefs) for guardian ad litem-appellant.

*Harold W. Conroy* (*Henshaw, Conroy & Hamilton* on the briefs) for guardians *Chinn Ho* and *Mark Norman Olds,* appellees.

*Charles A. Gregory* (*Smith, Wild, Beebe & Cades* with him on the briefs) for guardian *George H. Vicars, Jr.,* appellee.