DEREK SHIBUYA, Plaintiff-Appellant, and CLARK EQUIPMENT COMPANY, Defendant-Appellant, *v.* ARCHITECTS HAWAII, LIMITED, formerly known as Haines, Jones, Farrell, White, Gema, Architects, Ltd., also formerly known as Lemmon, Freeth, Haines, Jones & Farrell, Architects, Ltd., also formerly known as Lemmon, Freeth, Haines & Jones, Architects, Ltd., also formerly known as Lemmon, Freeth & Haines, Architects, Ltd., also formerly known as Lemmon & Freeth, Architects, Ltd., a professional corporation, Defendant-Appellee, and THOHT CONSTRUCTION, INC., formerly known as T. Takahashi, Ltd., a Hawaii corporation, Defendant and Third-Party Plaintiff-Appellee, and INDUSTRIAL WELDING, INC., a Hawaii corporation, Defendant and Third-Party Defendant-Appellee, and RELIANCE STEEL PRODUCTS COMPANY, FIRST DOE through FIFTIETH DOE, inclusive, and FIRST COMPANY through FIFTIETH COMPANY, inclusive, Defendants, and COCA-COLA BOTTLING COMPANY OF HONOLULU, INC., a Hawaii corporation, Third-Party Defendant

NO. 7139

(CIVIL NO. 53233)

JUNE 29, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ., AND RETIRED JUSTICES OGATA AND MENOR ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY NAKAMURA, J.

The appellants in this interlocutory appeal are the plaintiff and one of the putative joint tortfeasors in a negligence action; the

appellees are the other alleged joint tortfeasors who were awarded summary judgments pursuant to HRS § 657-8, which we considered in an earlier form and declared invalid in *Fujioka v. Kam*, 55 Haw. 7, 514 P.2d 568 (1973). Though the statute has since been extensively amended, we nevertheless conclude it does not pass constitutional muster for the same reason — it breaches "the equal protection guaranty." *Id.* at 13, 514 P.2d at 572.

I.

A.

Plaintiff-appellant Derek Shibuya (Plaintiff) sustained serious injuries on December 8, 1975 while operating a forklift at the bottling plant of his employer, Coca-Cola Bottling Company of Honolulu, Inc. (Coca-Cola). He suffered the injuries when a metal grating covering a culvert became dislodged as the forklift traversed it and the truck turned over. The grating had been emplaced when the building was constructed approximately nine years prior to the incident.

Plaintiff instituted his action for damages in the Circuit Court of the First Circuit on December 5, 1977; he claimed the combined negligence of numerous tortfeasors was the cause of his injuries. The defendants named in the pleading were: Architects Hawaii Limited (Architects), the designer of the building and the supervising architect during its construction; Thoht Construction Inc. (Thoht), the general contractor for the construction; Reliance Steel Products Company (Reliance), the fabricator of the metal grating; and Clark Equipment Company (Clark), the manufacturer of the forklift. The complaint also alleged numerous other defendants whose identities had not yet been established were also negligent and accountable in part for plaintiff's injuries.

Thoht subsequently filed a third-party complaint against Coca-Cola, the owner of both the forklift implicated in plaintiff's accident and the building where it occurred, and Industrial Welding, Inc. (Industrial), the subcontractor who was responsible for the steel and metal work involved in the construction of the building. Thoht alleged Coca-Cola and Industrial were primarily responsible for the

damages occasioned by plaintiff. The plaintiff thereupon amended his complaint to include Industrial as a named defendant.

After their responsive pleadings were filed, Architects, Thoht, and Industrial sought summary judgments; they averred, *inter alia,* that they were immune from actions for damages premised on negligence allegedly related to the construction of the bottling plant. HRS § 657-8,[1] they claimed, freed them from such suits, as the accident that caused plaintiff's injuries occurred more than six years after the building was completed. The circuit court agreed, and summary judgments in favor of Architects, Thoht, and Industrial were entered. The court, however, allowed Plaintiff and Clark to seek interlocutory review of the judgments.

## B.

Our revisitation of HRS § 657-8 begins with a recapitulation of the textual changes effected therein since *Fujioka v. Kam, supra,* where we held a statute that provided immunity from a negligence action after a lapse of six years for the designer and the builder of a building whose roof had collapsed and injured the plaintiff, but not for its owners, could not withstand constitutional scrutiny.[2] Al-

---

[1] When the motions for summary judgment were filed in 1978, HRS § 657-8 (1976) read as follows:

Limitation of action for damages based on construction to improve real property. No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of any condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against the owner of the real property or any other person having an interest therein or in the improvement or against any registered or duly licensed person performing or furnishing professional or licensed services in the design, planning, supervision, or observation of construction or construction of the improvement to real property more than two years after the cause of action has accrued, but in any event not more than six years after the completion of the improvement except that this provision shall not apply to surveyors for their own errors in boundary surveys. This section shall not apply to actions for damages resulting from the negligent conduct of the owner of the real property or any other person having an interest therein or in the improvement in the repair or maintenance of the improvement.

[2] When it was enacted in 1967 HRS § 657-8 provided a ten-year limitation period; it read:

Limitation of action for damages based on professional services or licensed construction to improve real property. No action to recover damages for any

though we looked askance at the purpose of the law,[3] we nonetheless invalidated it on narrower equal protection grounds. For we also could perceive no "rational basis for treating the engineer and the contractor differently from the owners under the same circumstances." 55 Haw. at 12, 514 P.2d at 571.

Reading *Fujioka v. Kam* as a condemnation of the statute on grounds of "underinclusiveness", the legislature amended HRS § 657-8 in the following legislative session to include "the owner of the real property or any other person having an interest therein or in the improvement" within the class of persons subject to its special protection. S.L.H. 1974, c. 73.[4] And the six-year limitation period

---

injury to property, real or personal, or for bodily injury or wrongful death, arising out of any condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any registered and/or duly licensed person performing or furnishing professional or licensed services in the design, planning, supervision, or observation of construction or construction of the improvement to real property more than two years after the cause of action has accrued, but in any event not more than ten years after the performance or furnishing of the services except that this provision shall not apply to surveyors for their own errors in boundary surveys.

The ten-year period was shortened to six years by S.L.H. 1972, c. 133.

[3] The purpose of the law as originally enacted was stated in a relevant legislative committee report as follows:

The purpose of this bill is to provide a statute of limitation for liabilities allegedly resulting from negligence in the performance of work done by any registered and/or duly licensed person performing or furnishing professional or licensed services in the design, planning, supervision, or observation of construction or of the construction of improvement to real property.

Sen. Stand. Comm. Rep. No. 332, in 1967 Senate Journal, at 1002.

[4] The report on the measure from the committee in the House Committee on Judiciary and Corrections stated its broad purpose was "to amend Section 657-8 . . . to make the provisions of the section apply equally to all persons under like circumstances and conditions." The committee justified the decision not to bring manufacturers and suppliers of materials within the ambit of its protection in these terms:

Manufacturers and suppliers of materials have not been brought within the ambit of the statute because your Committee believes that they reasonably constitute a separate class. Materials can be physically and scientifically measured and tested before being offered for sale. Their durability and expected performance are usually well documented and backed by specific warrantys [sic] and guarantees. However, a building cannot be tested until after it is completed and with the passage of time. The concepts and services performed are primarily judgemental and change according to technological advances and the refinement of the state of the art. In the case of the owner, designer, contractor, and others involved in the

was modified so it would commence with the completion of the improvement, rather than the time when the services in question were performed by the professional or the contractor. *Id.* But the section was also made inapplicable to suits for damages based on the negligence of the owner or any other person with an interest in the property or "improvement in the repair or maintenance of the improvement." *Id.* The circuit court applied the 1974 version of HRS § 657-8 in awarding appellees summary judgments.

The section has been subjected to substantial alteration subsequent to the entry of the judgments. *See* S.L.H. 1979, c. 185, § 1; S.L.H. 1980, c. 70, § 2 and c. 232, § 34. While these textual changes were effected in 1979 and 1980, they are pertinent because they were given retrospective effect by the legislature and would apply to the case upon its remand for trial if their validity is sustained.[5]

The primary purpose of the 1979 amendments as stated by the legislature was "to provide protection by law, not presently afforded, to manufacturers, materialmen and persons constructing or repairing any real property, against an action for damages based on such construction." Hse. Stand. Comm. Rep. No. 618, in 1979 House Journal, at 1432. The intention was "to have the statute apply to all persons who can, by a sensible reading of the words, be brought within its ambit." Sen. Stand. Comm. Rep. No. 707, in 1979 Senate Journal, at 1308.[6] The harsh effects of the six-year limitation were

---

creation of the improvement, proof of "due care" would serve as a defense. However, in the case of materials, which can be measured and tested, strict liability governs and "due care" is not a defense.
Hse. Stand. Comm. Rep. No. 704-74, in 1974 House Journal, at 821-22.

[5] S.L.H. 1979, c. 185, § 4 provides that:

The amendments made by this Act shall apply to any action or proceeding which is commenced on or after the date of its approval and, to the extent permitted by law, to any action or proceeding which is pending on the date of such approval.

The 1980 amendments were given retrospective effect through similarly worded provisions. *See* S.L.H. 1980, c. 70, § 5.

[6] The justification for the expansive coverage changes was expressed as follows:
In 1974, the legislature amended the 1967 statute to meet what was perceived to be the Court's objections by adding the owner and others with an interest in the real property to the class of protected persons. The amended provision did not, however, include manufacturers and materialmen. As explained in the Commit-

also tempered by the enactment of a saving clause that permitted actions for injury or death sustained during the fifth and sixth years following completion of the improvement to be brought within two years of the date of occurrence, but in no event more than eight years after completion. S.L.H. 1979, c. 185, § 2.

These expansive amendments, which were passed to afford the protection of a statute of ultimate repose to "manufacturers, materialmen and [all] persons constructing or repairing any [improvement to] real property," did not constitute the final legislative word on the subject. Hse. Stand. Comm. Rep. No. 618, in 1979 House Journal, at 1432. For in 1980, HRS § 657-8 was further amended "to provide that the limitation of actions for damages based on construction to improve real property be extended equally to the owner, surety or other person having any interest in such real property or improvements."[7] Hse. Stand. Comm. Rep. No. 595-80, in 1980

---

tee reports, the legislature believed that manufacturers and materialmen reasonably constituted a separate and distinguishable class and, thus, did not have to be included within the protection of the statute.

We think the 1974 legislature's decision to exclude manufacturers and materialmen from the ambit of the statute was sound. However, in mainland cases where statutes similar to Hawaii's have recently been tested, there have been a number of decisions holding such an exclusion to be a violation of equal protection. Though these cases are a minority of the reported decisions, it does raise a question as to the validity of the present law.

To resolve the constitutional doubts concerning section 657-8, H.B. No. 1496, H.D. 1 would amend the statute to broaden its scope to include manufacturers, materialmen and others involved in improvements to real property.
Sen. Stand. Comm. Rep. No. 707, in 1979 Senate Journal, at 1308.

[7] HRS § 657-8 now reads:

Limitation of action for damages based on construction to improve real property. No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of any condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against the owner of the real property or any other person or the surety of a person having an interest therein or in the improvement or against any person or the surety of a person constructing, altering, or repairing the improvement, or manufacturing or furnishing materials incorporated in the improvement, or performing or furnishing services in the design, planning, supervision, observation of construction or administration of construction contracts for any construction, alteration or repair of the improvement to real property more than two years after the cause of action has accrued, but in any event not more than six years after the date of completion of the improvement. This section shall not apply to actions for damages against the

House Journal, at 1549. The legislature found it "essential that the protection against liability afforded to sureties . . . be made clear and specific." *Id.* Thus, every person who may have been implicated in the original construction of an improvement to real property, other than a land surveyor, is now sheltered from suits premised on negligence related thereto after a lapse of six or eight years.

## II.

The ultimate question here is, of course, whether HRS § 657-8 offends the equal protection clause of the Fourteenth Amendment or its State counterpart, Article I, § 5 of the Hawaii Constitution.[8] But as Architects and Industrial contend neither Plaintiff nor Clark are in a position to raise the foregoing constitutional issue, we address the objections registered by the appellees first.

Architects' thesis in this regard is that one who would "challenge the constitutionality of a statute must bring himself within the class against whom the statute operates unconstitutionally." Industrial maintains Plaintiff and Clark are attempting "to assert alleged constitutional rights that are not personal to them."[9] The appellants

---

owner or any other person having an interest in the real property or improvement based on their negligent conduct in the repair or maintenance of the improvement or to actions for damages against surveyors for their own errors in boundary surveys. The term "improvement" as used in this section shall have the same meaning as in section 507-41 and the phrase "date of completion" as used in this section shall mean the time when there has been substantial completion of the improvement or the improvement has been abandoned. The filing of an affidavit of publication and notice of completion with the circuit court where the property is situated in compliance with section 507-43(f) shall be prima facie evidence of the date of completion. Inclusion of sureties in this section shall not be construed to prevent, limit, or extend any shorter period of limitation applicable to sureties provided for in any contract or bond or any other statute, nor to extend or add to the liability of any surety beyond that for which the surety agreed to be liable by contract or bond.

[8] Article I, § 5 of the State Constitution provides:

No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

[9] The briefs, however, were submitted prior to the effective date of S.L.H. 1979, c. 185, which was June 5, 1979.

obviously do not belong to a class of persons the statute in question could possibly benefit. Still, we experience no difficulty in arriving at a conclusion that Plaintiff and Clark have standing to question whether they are being denied "the equal protection of the laws." For they are not asserting rights on behalf of others; they have been aggrieved by the summary judgments entered below.[10] *In re Guardianship of Ward,* 42 Haw. 60, 65 (1957); *Hawaiian Trust Co. v. Holt,* 24 Haw. 212, 215 (1918). And they have been disadvantaged by distinctions drawn by the legislature in the enactment and reenactments of HRS § 657-8. *See Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 525-26 (1959); *see also* Ely, *Legislative and Administrative Motivation in Constitutional Law,* 79 Yale L.J. 1205, 1228 (1970).

Plaintiff undoubtedly has been placed in a disadvantageous position by HRS § 657-8, since it renders it impossible for him to assert a claim against several persons who may otherwise be answerable in damages for their negligence. Moreover, if Clark demonstrates the truck was not defective when manufactured, the statute would serve to totally divest him of a cause of action. Clark, likewise, has been seriously disadvantaged. It may, of course, be held accountable for all of the damages occasioned by Plaintiff. At the least, the statute as it now stands relegates Clark to the unenviable position of being the sole defendant. This also poses serious problems for Clark in mounting a defense to the action. It would definitely be hampered in efforts to show that others were entirely or partly responsible for Plaintiff's mishap, as the complaint suggests. *See Sugue v. F. L. Smithe Machine Co.,* 56 Haw. 598, 546 P.2d 527 (1976); Miller, *Filling the "Empty Chair": Some Thoughts About Sugue,* XV Hawaii Bar J. 69 (Summer 1980); *Stewart v. Budget Rent-A-Car Corp.,* 52 Haw. 71, 470 P.2d 240 (1970). Hence, the appellants are entitled to seek a ruling on whether the distinction among tortfeasors drawn by the legislature is inconsistent with the equal protection guaranteed by Article I, § 5 of the State Constitution and the Fourteenth Amendment, and we proceed to their challenge of HRS § 657-8.

---

[10] The circuit court's allowance of an interlocutory appeal stands in testimony of this fact.

## III.

"The equal protection obligation . . . is not an obligation to provide the best governance possible." *Schweiker v. Wilson,* 450 U.S. 221, 230 (1981). "To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons." *Rinaldi v. Yeager,* 384 U.S. 305, 309 (1966). Yet even where a statute does not employ "a classification that is inherently invidious or that impinges on fundamental rights," the mandate is "that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives." *Schweiker v. Wilson, supra,* 450 U.S. at 230. To satisfy this "rational basis" test,[11] "the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415 (1920).

### A.

An inquiry on whether HRS § 657-8 furthers legitimate State objectives in rational fashion logically starts with an identification of the statute's purpose. Our task here is facilitated by the legislative history of the relevant section from its genesis to its most recent alteration.[12] But the purpose asserted by the legislature has not been static, and what first appeared as the purpose has been obscured, if not obliterated.

---

[11] The test has been described as holding "two firmly established principles in tension." These are that a court "must not substitute its view of wise or fair legislative policy for that of the duly elected representatives of the people, . . . but the equal protection requirement does place a substantive limit on legislative power." Schweiker v. Wilson, *supra,* 450 U.S. at 243 (Powell, J., dissenting) (citations omitted).

[12] "[W]hen an examination of the legislative scheme and its history demonstrates that the asserted purpose could not have been a goal of the legislation," legislative assertions of purpose need not be accepted at face value in equal protection cases. Weinberger v. Wiesenfeld, 420 U.S. 636, 648 n.16 (1975). Otherwise, "the lawmakers' purposes in enacting a statute" as they are explicitly set forth or clearly discernible from the legislative history should not be disregarded. Kassel v. Consolidated Freightways Corp., 450 U.S. 662, 682 n.3 (1981) (Brennan, J., concurring).

The original design, as expressed in a committee report, was

> to provide a statute of limitation for liabilities allegedly resulting from negligence in the performance of work done by any registered and/or duly licensed person performing or furnishing professional or licensed services in the design, planning, supervision, or observation of construction or of the construction of improvement to real property.

Sen. Stand. Comm. Rep. No. 332, in 1967 Senate Journal, at 1002. When the statute was modified in 1972 by shortening the time within which negligence actions could be brought against registered or licensed persons performing or furnishing the foregoing services from the ten years initially prescribed to six years, the rationale for the change was phrased as follows:

> Your Committee finds that ample justification for a reduction in the length of limitation has been presented by the General Contractors Association of Hawaii and the Consulting Engineers Council of Hawaii. Specifically, they noted that:
>
> (1) Records get lost with time so that the basis for defense becomes cloudy.
>
> (2) Witnesses die or move away.
>
> (3) The longer the statutory period, the harder it becomes to distinguish between negligence in design or construction and negligence in maintenance.
>
> (4) In Hawaii, almost 80 per cent of all claims are initiated in the first three years.

Hse. Stand. Comm. Rep. No. 615-72, in 1972 House Journal, at 928. And when the question of the law's constitutionality reached us in 1973, we found the "purpose of the legislation was to grant immunity to registered and licensed persons performing services in the construction industry." *Fujioka v. Kam, supra,* 55 Haw. at 11, 514 P.2d at 571.[13]

---

[13] Our statement in this regard was:

> It would appear that the object or purpose of the legislation was to grant immunity to registered and licensed persons performing services in the construction industry. One may question whether this grant of immunity is justified as a reasonable exercise of the police power of the state.

55 Haw. at 11, 514 P.2d at 571.

> Thus, we had some misgivings about the purpose of the statute even when we considered it in a narrower form.

Undaunted by our ruling there that HRS § 657-8 did not fulfill the obligation to treat those similarly circumstanced evenly, the legislature in 1974 broadened the category of partially immunized beneficiaries of the law to include " 'the owner of the real property or any other person having an interest therein or in the improvement.' " Hse. Stand. Comm. Rep. No. 704-74, in 1974 House Journal, at 821. The lawmakers candidly set forth the actual purpose of the amendment, stating in part:

> In the case of *Fujioka v. Kam,* Supreme Court of Hawaii No. 5328 (1973) the supreme court of this State held that the statute violated the equal protection clause of the Constitution because it granted immunity only to certain classes of persons, i.e., architects and contractors, and the court was unable to determine any reasonable basis for such special treatment.
>
> In order to meet the constitutional requirements as set forth in the *Fujioka* decision, this bill extends the statute of limitation to include "the owner of the real property or any other person having an interest therein or in the improvement". Your Committee finds that the owner or other person having an interest in the improvement should be afforded the same protection as architects or engineers if the damages caused cannot be attributed to negligent maintenance.

*Id.* But as we noted earlier, "[m]anufacturers and suppliers of materials . . . [were not] brought within the ambit of the statute because . . . they reasonably constitute a separate class." *See* note 4 *supra.*

What "reasonably constitute[d] a separate class" not warranting the special protection afforded by HRS § 657-8 in 1974, however, was incorporated within the favored class in 1979. *See* S.L.H. 1979, c. 185. The turnabout in policy was justified in these terms:

> It was the belief of past lawmakers that manufacturers and materialmen reasonably constituted a separate and distinguishable class, thus, did not have to be included within the protection of the statute. Although at the time it was made, this decision was "sound", in recent court cases where statutes similar to this were tested, there have been a number of decisions holding such an exclusion to be a violation of equal protection of the law. Though these cases are few in number, they raise a question as to the validity of present law.

Hse. Stand. Comm. Rep. No. 618, in 1979 House Journal, at 1433.

And the expanded purpose of the statute was declared as follows:

> Your Committee feels that the intent of this bill which broadens the scope of law, making it applicable to all persons who can, by a sensible reading of the words, be brought within its ambit, is logical and reasonable. The only persons excluded would be owners in suits based on their negligent conduct in the repair or maintenance of the improvement and surveyors in suits based on their own errors in boundary surveys. These exclusions exist in the present law and are merely carried forward in this proposal.

*Id.*[14] Thus the intent of the legislature in 1979 was to provide partial immunity for all who could, "by a sensible reading of the words," be brought within the ambit of HRS § 657-8.

Yet a year later the law's protective reach was extended even further to also cover the sureties of persons previously protected. The legislature again verbalized its reason for acting with candor, stating in part:

> Your Committee received testimony that the assumption that sureties are protected along with other parties having an interest in the improvement of real property is incorrect. In a recent case involving a similarly worded statute, the California Supreme Court in *The Regents of the University of California v. Hartford Accident and Indemnity Company*, 21 Cal.3d 624 (1978) ruled that sureties were not protected under the provisions of such law.
>
> Your Committee finds that it is therefore essential that the protection against liability afforded to sureties under the statute of limitations be made clear and specific.

Hse. Stand. Comm. Rep. No. 595-80, in 1980 House Journal, at 1549.

The relevant history, therefore, is one of accretions to what originally was a narrow purpose, and the policy now articulated by the language of HRS § 657-8 apparently is to shield all who have any connection with the construction of an improvement to real property from negligence actions after a lapse of six or eight years. Our task then is to decide whether this advances legitimate governmental goals in a reasonable manner.

---

[14] *See* note 6 *supra,* for content of Sen. Stand. Comm. Rep. No. 707, to similar effect.

## B.

"In civilized society men must be able to assume that others will act reasonably and prudently so as not, by want of due care under the circumstances, to impose upon them an unreasonable risk of injury." V R. Pound, *Jurisprudence* 283-84 (1959). That we have accepted this postulate of common law jurisprudence is incontestable; for negligence is a major component of the scheme of torts we have embraced. But considerations of fairness for defendants have actuated legislation that requires suits for damages resulting from tortious conduct to be brought within fixed times after the causes of action arise.

"The basic policy underlying statutes of limitation is to require prompt assertion of claims." *Yoshizaki v. Hilo Hospital,* 50 Haw. 150, 154, 433 P.2d 220, 223 (1967). However, there is "another important policy, that favoring adjudication of claims on the merits and ensuring that a party with a valid claim will be given an opportunity to present it." *Id.* Given a choice between the two in *Yoshizaki,* we did not hesitate to favor the latter. We concluded the limitation statute there did "not begin to run until the plaintiff knew or should have known of the defendant's negligence." *Id.* For "[t]he injustice of barring the plaintiff's action before she could reasonably have been aware that she had a claim . . . [was] patent." *Id.*

Unlike the situation in *Yoshizaki,* however, the legislative command in HRS § 657-8 is explicit, and how the section is to be applied has not been left for us to decide. Nor is there any doubt about the legislature's power to "change or entirely abrogate common law rules." *Fujioka v. Kam, supra,* 55 Haw. at 10, 514 P.2d at 570. Still, "the equal protection requirement does place a substantive limit on legislative power," *Schweiker v. Wilson, supra,* 450 U.S. at 243 (Powell, J., dissenting), and it is our function to determine when the exercise of such power has transgressed constitutional bounds. *Fujioka v. Kam, supra.*

What is at bar is not strictly a limitation statute, for HRS § 657-8 has an anomalous effect in some situations of preventing the accrual of a right of action rather than restricting the invocation of a remedy. It grants partial immunity to a large class of potential tortfeasors solely on the basis of their participation in some way in the construction of an improvement to real property. Involvement in

the construction, no matter how slight, serves to insulate possible tortfeasors from suits for negligent conduct following the passage of relatively short periods, relative to the improvement's expected durability. Others are sheltered in like manner despite the performance guarantees they have posted on behalf of those who were actively involved. And persons owning interests in the improvement are similarly shielded from possible liability. In short, by design or otherwise a special immunity has been conferred on the construction industry and allied professionals like architects and engineers, the industry's material suppliers, its performance guarantors, and property owners and others who contract for the services of its members.

The "limitation" statute in question was first adopted because of a legislative perception that the passage of time rendered the defense of suits grounded on allegedly faulty design or construction of buildings difficult. The problems experienced by architects, engineers, and contractors in the defense of negligence actions, the lawmakers also found, were distinct from those encountered by other putative tortfeasors. In the legislature's opinion, special treatment of actions "for damages based on professional services or licensed construction to improve real property" was warranted. S.L.H. 1967, c. 194; *see* Sen. Stand. Comm. Rep. No. 332, in 1967 Senate Journal, at 1002; Hse. Stand. Comm. Rep. No. 615-72, in 1972 House Journal, at 928. And the subsequent expansions of protective coverage were rationalized as efforts to ensure the legality of earlier attempts to legislate a fair limitation statute. *See* Hse. Stand. Comm. Rep. No. 704-74, in 1974 House Journal, at 821-22; Hse. Stand. Comm. Rep. No. 618, in 1979 House Journal, at 1432; Hse. Stand. Comm. Rep. No. 595-80, in 1980 House Journal, at 1549.

When we first examined HRS § 657-8 we were apprehensive about the object of an earlier version despite its bestowal of immunity limited "to registered and licensed persons performing services in the construction industry," and questioned whether this was "justified as a reasonable exercise of the police power of the [S]tate." *Fujioka v. Kam, supra,* 55 Haw. at 11, 514 P.2d at 571. We are troubled here too, especially by the wider immunity legislated as a consequence of our initial visitation of the statute and by the injustice of barring a suit before the plaintiff "could reasonably have been aware

that . . . [he] had a claim." *Yoshizaki v. Hilo Hospital, supra,* 50 Haw. at 154, 433 P.2d at 223.

Yet, fairness for defendants and the prompt assertion of claims are proper legislative concerns, and legislation must often favor a segment of society over others. We are reminded, of course, that a court should "not substitute its view of wise or fair legislative policy for that of the duly elected representatives of the people." *Schweiker v. Wilson, supra,* 450 U.S. at 243 (Powell, J., dissenting). Thus, we hesitate to declare the legislation at issue is constitutionally infirm on grounds that it does not further legitimate State objectives. Whether "all persons similarly circumstanced" have been "treated alike," *F.S. Royster Guano Co. v. Virginia, supra,* 253 U.S. at 415, however, is a question reserved for judicial determination.

### C.

The classificatory scheme in HRS § 657-8, as it now stands, operates to cloak putative tortfeasors with partial immunity on the basis of membership in a particular industry or an alliance therewith in some way or form. Consequently, Architects, Thoht, Industrial, and Reliance are screened from liability in the instant situation. Since Clark has no ties with the favored industry and was not involved, directly or indirectly, in the construction of Coca-Cola's bottling plant, it is saddled with the burden of defending a lawsuit alone. And this is so in spite of Plaintiff's averments that the others should also be accountable for his injuries.

As in *Fujioka v. Kam,* the appeal in this case is from the award of summary judgment. Hence, we assume Plaintiff's mishap was the result of the combined fault of (1) Clark in manufacturing a defective highlift, (2) Reliance in producing an imperfect steel grating, (3) Industrial in carelessly installing the grating, (4) Architects in negligently designing the building or its components, and (5) Thoht in constructing a faulty building. As we observed, everyone except Clark has been immunized against the suit pursuant to HRS § 657-8. Clark stands alone because of a legislative decision to grant partial immunity to anyone directly or indirectly implicated in the construction of the building, a decision rationalized on grounds that special problems arise in the defense of negligence actions when six years have elapsed after construction. Yet we cannot say Clark's problems

in defending itself would be simpler than those likely to be encountered by other defendants above.

Reliance was retroactively released from possible liability here in 1979. *See* S.L.H. 1979, c. 185; Sen. Stand. Comm. Rep. No. 707, in 1979 Senate Journal, at 1307-08; Hse. Stand. Comm. Rep. No. 618, in 1979 House Journal, at 1432-33. Immunity had not been extended earlier to manufacturers and suppliers of materials because

> [m]aterials can be physically and scientifically measured and tested before being offered for sale. Their durability and expected performance are usually well documented and backed by specific warrantys and guarantees. However, a building cannot be tested until after it is completed and with the passage of time. The concepts and services performed are primarily judgemental and change according to technological advances and the refinement of the state of the art. In the case of the owner, designer, contractor, and others involved in the creation of the improvement, proof of "due care" would serve as a defense. However, in the case of materials, which can be measured and tested, strict liability governs and "due care" is not a defense.

Hse. Stand. Comm. Rep. No. 704-74, in 1974 House Journal, at 821-22. We have no cause to believe manufacturers and suppliers of materials would bear a lesser burden today in the defense of negligence actions. As a manufacturer, Clark may well be answerable to Plaintiff on the basis of "strict liability" as the foregoing legislative committee report suggests. And so would Reliance but for HRS § 657-8, since it either fabricated the grating or supplied the necessary material.

Industrial's immunity grant was part of the original legislation covering the "[l]imitation of action[s] for damages based on professional services or licensed construction to improve real property." *See* S.L.H. 1967, c. 194; Sen. Stand. Comm. Rep. No. 332, in 1967 Senate Journal, at 1002; Hse. Stand. Comm. Rep. No. 790, in 1967 House Journal, at 781. As a licensed contractor, Industrial presumably was afforded partial immunity because the "services [it] performed . . . [were] primarily judgemental and [subject to] change according to technological advances and the refinement of the state of the art." Hse. Stand. Comm. Rep. No. 704-74, in 1974 House Journal, at 822. But as it was a subcontractor performing functions limited to the fabrication or installation of the metal grating, we do

not think its services were primarily judgmental in character. We are assuming, of course, that the services were contracted to be performed in compliance with plans and specifications prepared by the professionals involved. We further agree with the legislature that "due care" would probably be the standard of conduct expected of it if Plaintiff's suit proceeded to trial. There is also no reason to believe Industrial would be subject to a more stringent standard than the "strict liability" likely to be imposed, in the legislature's opinion, on Clark as a manufacturer and on Reliance as a supplier of materials.

As we noted, when the ten-year time limitation prescribed initially was shortened to six years, the rationale therefor was stated in terms of records getting lost, witnesses dying or moving away, negligence in design or construction and negligence in maintenance becoming undistinguishable with the passage of time, and the bulk of all claims being initiated during the first three years following the construction. *See* Stand. Comm. Rep. No. 615-72, in 1972 House Journal, at 928. The first three reasons would in all probability also be applicable in Clark's situation or that of any manufacturer. While there is no actual basis for judging whether the fourth would apply to claims involving defectively manufactured highlifts too, we have no cause to believe it would not.

Therefore, we are unable to distinguish Clark's situation as a manufacturer defending itself against a claim for damages from that of Reliance as a supplier of materials similarly circumstanced. Nor can we perceive a difference in plight that could rationally support immunity for Industrial in the instant suit but not for Clark. For the disparity in the statute's treatment of the two does not parallel the relative burdens that they would otherwise be compelled to shoulder — the "strict liability" the legislature believes tortfeasors like Clark would be subject to is undoubtedly a heavier burden than the "due care" standard it thinks tortfeasors like Industrial would otherwise have to meet. The bestowal of immunity here on the basis of construction industry membership or alliance "does not rest upon some reasonable consideration of differences (between the classes under the same circumstances), which have a fair and substantial relation to the object of the legislation." *Fujioka v. Kam,* 55 Haw. at 12, 514 P.2d at 571. Equal protection being a requisite "both in the privileges conferred and in the liabilities imposed," *State v. Johnston,* 51 Haw. 195, 202, 456 P.2d 805, 809 (1969), *appeal dismissed,* 397 U.S. 336

(1970), HRS § 657-8 is constitutionally infirm.

The decision here rests on our reading of Article I, § 5 of the Constitution of the State of Hawaii, though we have sought guidance from the decisions of the Supreme Court on equal protection under the Fifth and Fourteenth Amendments.[15]

The summary judgments awarded appellees are vacated, and the case is remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Raymond J. Tam (Henry N. Kitamura* with him on the briefs; *Shim, Sigal, Tam & Naito,* of counsel) for plaintiff-appellant.

*John A. Roney (Grant K. Kidani* with him on answering briefs; *Stubenberg & Roney,* of counsel) for defendant-appellant, Clark Equipment Company.

*Michiro Iwanaga (Wayne M. Sakai, John D. Thomas, Jr.,* and *Earl T. Sato* on answering brief; *Burke, Ashford, Sakai, McPheeters, Bordner & Gilardy,* of counsel) for defendant and third-party defendant-appellee, Industrial Welding, Inc.

*Bruce C. Bigelow (Wesley W. Ichida* and *David M. Louie* with him on answering brief; *Case, Kay & Lynch,* of counsel) for defendant-appellee, Architects Hawaii Limited; on answering brief, *George W. Brandt* and *Thomas E. Cook (Lyons, Hagerman & Brandt,* of counsel) for defendant and third-party plaintiff-appellee, Thoht Construction, Inc.

---

[15] That the Court has by implication approved at least one state court decision upholding the validity of a statute providing immunity for architects and constructors in the manner HRS § 657-8 originally did, also has not escaped us. *See* Carter v. Hartenstein, 248 Ark. 1172, 455 S.W.2d 918 (1970), *appeal dismissed,* 401 U.S. 901 (1971). However, the dismissal was "for want of substantial federal question," which was a decision on the merits. *See* Hicks v. Miranda, 422 U.S. 332, 344-45 (1975).