FILED
COURT OF APPEALS
DIVISION II

2014 DEC 30 AM 9: 47

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TIMOTHY INGRAM and ROSEMARY INGRAM, husband and wife, | No. 44971-4-II |
| Appellants, | |
| v. | |
| AMERICAN CONTRACTOR INDEMNITY COMPANY, a California corporation, | UNPUBLISHED OPINION |
| Respondent, | |
| NORTHWEST SEPTIC O & M, INC., a Washington corporation, MARK WHISNANT CONSTRUCTION INC., a Washington corporation, and CALVIN L. ROWAN, an unmarried individual, d/b/a CAL'S CUSTOM CONSTRUCTION, AMERICAN STATES INSURANCE COMPANY, an Indiana corporation, CONTRACTORS BONDING AND INSURANCE COMPANY, a Washington corporation, | |
| Defendants. | |

BJORGEN, J. — Timothy and Rosemary Ingram seek discretionary review of a trial court order granting summary judgment in favor of the American Contractor Indemnity Company

(ACIC) and dismissing it from a suit arising out of construction on the Ingrams' property. The trial court concluded that the Ingrams' suit was untimely based on the two-year statute of limitations for suits against a contractor's surety bond found in RCW 18.27.040(3).[1] The Ingrams argue that the trial court erred in granting summary judgment because material issues of fact remain as to whether and when the statute of limitations commenced.

We hold that under the undisputed facts, construction was not substantially complete and the contractor had not abandoned the project. For those reasons, the trial court erred in holding that the Ingrams' suit was untimely under the statute of limitations. Therefore, we reverse the order of summary judgment in favor of ACIC.

## FACTS

In August 2008, the Ingrams' septic system failed. The contractor the Ingrams hired to replace the system informed them that the project would require the removal of the Ingrams' deck, which the contractor promised to rebuild after replacing the septic system. The contractor also assured the Ingrams that no permits would be required for replacing the septic system and deck.

After the replacement of the septic system, the Ingrams turned to a second contractor to rebuild the deck and enclose it with a roof, transforming it into a sun-room. This second contractor did not obtain any building permits for this work. The Ingrams terminated the services of this

---

[1] RCW 18.27.040(3) provides, in pertinent part:
> Action upon the bond or deposit brought by a residential homeowner for breach of contract by a party to the construction contract shall be commenced by filing the summons and complaint with the clerk of the appropriate superior court within two years from the date the claimed contract work was *substantially completed or abandoned, whichever occurred first.*

(Emphasis added.)

contractor because he repeatedly showed up for work intoxicated, and, as a result, his workmanship on the deck and sun-room was poor.

In June 2009, the Ingrams hired Cal's Construction to finish the partially completed deck and sun-room and remedy the second contractor's deficient performance. At the time of this construction contract, and during its performance, ACIC bonded Cal's with a "Contractor's Registration Act" surety bond, chapter 18.27 RCW. Like the earlier contractors, Cal's never obtained any permits for the work. Cal's finished performing labor and issued final invoices to the Ingrams on June 17, 2009, stating that all work was complete. Believing the project finished, the Ingrams paid Cal's in full for all work performed. Cal's never performed any further work at the Ingrams' property after payment of this invoice.

In late 2011, the Kitsap County Department of Community Development issued the Ingrams a notice demanding that they comply with Kitsap County building codes by obtaining the necessary building permits, inspections, and approval to use the deck and sun-room. An independent inspection of the deck and sun-room resulting from this notice revealed numerous structural defects and code violations.

In October 2012, the Ingrams sued several defendants, including Cal's and ACIC. The Ingrams alleged that Cal's had breached the construction contract between the parties by performing defective work and that ACIC was Cal's surety.

ACIC moved for dismissal under CR 12(c), alleging that the Ingrams failed to file their claims against it within the two year statute of limitations for actions against a contractor's bond codified in RCW 18.27.040(3). Under that provision, the statute of limitations for claims against

3

a surety bond commences at the earlier of a construction project's substantial completion or abandonment. RCW 18.27.040(3). The Ingrams defended against this dismissal by arguing that material issues of fact remained about whether the statute of limitations had commenced. The Ingrams contended that the final invoice, code violations, and lack of approval to use or occupy the deck and sun-room meant that the construction work was never substantially completed and that the final invoice showed that no abandonment had occurred. Because the parties referenced matters outside the pleadings, the trial court considered ACIC's motion as one for summary judgment under CR 56(c). The trial court granted ACIC's motion, dismissing it from the suit with prejudice and granting it reasonable attorney fees and costs as the prevailing party under RCW 18.27.040(6).

The Ingrams appealed the trial court's order granting summary judgment to ACIC. Because the trial court had not entered final judgment on all of the Ingrams' claims under CR 54(b), our commissioner considered the Ingrams' notice of appeal as a motion for discretionary review and granted the motion.

## ANALYSIS

RCW 18.27.040(3) states that an action against a contractor's surety bond must commence within two years of the earlier of either the date of "substantial complet[ion]" or "abandonment" of a construction contract. The Ingrams claim that the trial court improperly granted summary judgment in favor of ACIC because Cal's never substantially completed or abandoned the construction contract for their deck and sun-room. We agree.

4

No. 44971-4-II

## I. STANDARD OF REVIEW

We review de novo an order of summary judgment, performing the same inquiry as the trial court. *Am. States Ins. Co. v. Symes of Silverdale, Inc.*, 150 Wn.2d 462, 467, 78 P.3d 1266 (2003) (citing *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002)). We consider the facts and the inferences from those facts in the light most favorable to the Ingrams, the nonmoving party here. *Jones*, 146 Wn.2d at 300 (citing *Bremerton Pub. Safety Ass'n v. City of Bremerton*, 104 Wn. App. 226, 230, 15 P.3d 688 (2001)). Summary judgment is appropriate if the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Jones*, 146 Wn.2d at 300-01 (citing *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000)).

We review de novo the meaning of a statute. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). When interpreting a statute, we attempt to discern and give meaning to the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 9-10. We discern the legislature's intent through the plain text of the statute, as well as the text of any related provisions. *Campbell & Gwinn*, 146 Wn.2d at 11-12. Where a provision "remains susceptible to more than one reasonable meaning" after this textual examination, it is ambiguous and we turn to extrinsic evidence of legislative intent, such as legislative history, canons of construction, or common law precedent. *Campbell & Gwinn*, 146 Wn.2d at 12 (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001)).

II. SUBSTANTIAL COMPLETION

The Ingrams first argue that the trial court erred in granting ACIC summary judgment because they introduced evidence showing that it would have been illegal to use or occupy the deck and sun-room. The Ingrams contend that this evidence shows that the deck and sun-room were not fit for occupancy. ACIC effectively concedes the Ingrams' argument by failing to address the substantial completion issue in its briefing. *State v. E.A.J.*, 116 Wn. App. 777, 789, 67 P.3d 518 (2003). We accept this concession because we conclude that the absence of legal permission to use or occupy the deck and sun-room prevented the Ingrams from lawfully using or occupying those structures and that therefore the structures were not substantially complete.

"Substantial complet[ion]" as used in RCW 18.27.040(3) has the same meaning as "substantial completion of construction" as used in RCW 4.16.310. RCW 18.27.010(13). RCW 4.16.310 defines "substantial completion of construction" as "the state of completion reached when an improvement upon real property *may be used or occupied for its intended use.*" (Emphasis added.)

The texts of RCW 4.16.310 and RCW 18.27.040(3) themselves are ambiguous as to whether legal permission to use or occupy an improvement on real property is necessary to commence the statute of limitations for suits against contractors' surety bonds. RCW 4.16.310's use of "may" reasonably could be read to define substantial completion as a state reached where the construction is sufficiently advanced that an owner *could* use or occupy the improvement. *1519-1525 Lakeview Blvd. Condo. Ass'n v. Apartment Sales Corp.*, 101 Wn. App. 923, 931, 6 P.3d 74 (2000), *aff'd* 144 Wn.2d 570, 29 P.3d 1249 (2001). Under this reading, legal permission to use or occupy the improvement would be irrelevant to determining its completion. Whether the statute

6

of limitations for an action against a contractor's surety bond had commenced would turn purely on the physical state of the improvement. But "may" is also commonly used to mean to have "permission" to do something, and RCW 4.16.310 therefore may also reasonably be read to define substantial completion as the state reached where the owner has legal permission to use or occupy the improvement. WEBSTER'S THIRD NEW INT'L DICTIONARY 1396 (2002) (definition of "may.").[2]

The related provisions of chapter 18.27 RCW do not help us resolve the ambiguity found in the language of RCW 4.16.310 and RCW 18.27.040(3). The legislature enacted chapter 18.27 RCW "to afford protection to the public including all persons, firms, and corporations furnishing labor, materials, or equipment to a contractor from unreliable, fraudulent, financially irresponsible, or incompetent contractors." RCW 18.27.140. On the other hand, RCW 18.27.040, which limits the liability of surety bonds, "prevent[s] stale claims and place[s] a reasonable time limitation on the personal liability exposure" of contractors and their surety bonds. *1519-1525 Lakeview Blvd. Condo. Ass'n*, 101 Wn. App. at 940 (analyzing RCW 4.16.310). We cannot discern which of these goals the legislature deems more important and therefore cannot resolve the tension between them in the context presented by this appeal.

Because the resolution of this ambiguity appears to be a question of first impression in this state, we may turn to the common law of other states for persuasive authority in resolving the

---

[2] The Kitsap County Code (KCC) incorporates the International Building Code (IBC) (2009 edition). KCC 14.04.040A. IBC section 111.1 provides that "[n]o building or structure shall be used or occupied . . . until the *building official* has issued a certificate of occupancy therefor as provided herein." (Emphasis omitted.) A certificate of occupancy only issues after an inspection of the building finds no code violations. IBC § 111.2. Permission to use or occupy the deck and sun-room here thus required a certificate of occupancy, which neither the Ingrams nor any contractor they hired obtained.

ambiguity inherent in the legislature's use of "may." *In re Parentage of L.B.*, 155 Wn.2d 679, 702, 122 P.3d 161 (2005). Unfortunately, other states with similar statutory schemes, albeit slightly different language, have split on whether legal permission to use or occupy an improvement is necessary for its substantial completion.

For example, *Rosso v. Hallmark Homes of Minneapolis, Inc.* held that only the physical state of the construction mattered when examining whether construction was substantially completed under an analogous Minnesota law that defines substantial completion as occurring "'when *construction is sufficiently completed so that* the owner or the owner's representative can occupy or use the improvement for the intended purpose.'" 843 N.W.2d 798, 802 (Minn. Ct. App. 2014) (quoting Minn. Stat. § 541.051, subd. 1(a)) (emphasis added). On the other hand, *Nolan v. Paramount Homes, Inc.*, 135 N.C. App. 73, 76, 518 S.E.2d 789 (1999) (quoting N.C.G.S. § 1-50(a)(5)(c)), held that the date an owner receives legal permission to use or occupy a structure marks the date of substantial completion under a statute defining substantial completion as "that degree of completion of a project, improvement, or specified area or portion thereof . . . upon attainment of which the owner can use the same for the purpose which it was intended." N.C.G.S. § 1-50(a)(5)(c). We therefore turn to other considerations and hold that these speak in favor of requiring legal permission to use or occupy an improvement on real property as a necessary condition for its substantial completion within the meaning of RCW 18.27.040(3).

First, public policy considerations strongly suggest that we should read RCW 4.16.310 and RCW 18.27.040(3) to define substantial completion as the state reached when the owners may

8

legally use an improvement on their property. Doing so provides incentives to surety bond companies to influence the contractors they bond to obtain the necessary permits and to perform work that will comply with applicable codes. Exercising this influence allows the companies to limit their exposure to liability, the purpose of RCW 18.27.040(3), while remaining faithful to the overall goal of chapter 18.27 RCW, where public safety is achieved through safe construction.

Second, we note that reading the definition of substantial completion as requiring approval to use the improvement benefits judicial economy. Basing substantial completion on legal approval, instead of the more amorphous inquiry into when an improvement *can* be used for a purpose, more brightly illuminates when the statute of limitations codified in RCW 18.27.040(3) commences.

For these reasons, legislative intent is best served by reading RCW 4.16.310 and RCW 18.27.040(3) to define substantial completion as the state reached when the owners may legally use an improvement on their property. Because the approvals needed for occupancy were not obtained, the improvements at issue were not substantially completed for purposes of these statutes.

### III. ABANDONMENT

The Ingrams next argue that the trial court erred in dismissing their claims against ACIC because they submitted evidence that the construction project had not been abandoned. The Ingrams argue that

> [a]bandonment, as that term i[s] most commonly understood, does not occur in a situation where the contractor appears to finish the job and issues a final invoice, the owner pays the invoice without protest, and the parties part on amicable terms.

Reply Br. of Appellant at 7. ACIC, which does contest this issue, argues that Cal's abandoned the project because it never returned to complete further work after the Ingrams paid the final invoice. We agree with the Ingrams that Cal's never abandoned work on the Ingrams' deck and sun-room. Summary judgment was inappropriate.

In contrast to "substantial completion," the legislature did not define the term "abandonment" in chapter 18.27 RCW. Where the legislature does not define a term, we may turn to the common law for the term's meaning. *State v. Garcia*, 179 Wn.2d 828, 837, 318 P.3d 266 (2014). The common law defines abandonment as the indefinite cessation of work prior to the completion of a construction project. *E.&W. Lumber Co. v. Williams*, 129 Or. 1, 7-8, 276 P. 257 (1929); *Chicago Lumber Co. v. Merrimack River Sav. Bank*, 52 Kan. 410, 34 P. 1045 (1893). Courts have split on whether abandonment is measured purely objectively or whether it has both objective and subjective components. *Langford Tool & Drill Co. v. Phenix Biocomposites, LLC*, 668 N.W.2d 438, 443-44 (Minn. Ct. App. 2003) (collecting cases and analyzing the issue).

We need not decide the extent to which abandonment is measured objectively or subjectively as the evidence here indicates that Cal's never abandoned the actual work under either measure. Cal's final invoice and the Ingrams' payment of that invoice is objective evidence that Cal's was not ceasing work before the completion of that work. Instead, Cal's ceased work *because* the construction itself had ended, even though occupancy approvals had not been obtained. This same evidence indicates no subjective intent on Cal's part to cease work before the completion of the actual construction.

ACIC contends that, whether characterized as "cessation of work, termination of services, or abandonment, the end result is the same" and that the statute of limitations commenced when

Cal's issued the final invoices. Br. of Resp't at 9. Cal's obviously terminated its services within the meaning of RCW 4.16.310. RCW 18.27.040(3), however, provides that the statute of limitations for surety bonds commences not with the termination of services, but with the "abandonment" of a project. Under the authority above, abandonment occurs where work on a project ceases for an indefinite period of time prior to its completion. With the issuance of Cal's final invoice and the Ingrams' payment of that invoice, it cannot reasonably be said that Cal's abandoned the project. Summary judgment, therefore, was inappropriate.

## IV. ATTORNEY FEES

The Ingrams do not request appellate attorney fees. ACIC requests reasonable attorney fees under RCW 4.84.250 and .290, under RCW 18.27.040(6), and under the stipulated judgment entered on July 2, 2013, which authorizes an award of attorney fees and costs incurred enforcing and/or executing on ACIC's judgment. We decline to award ACIC attorney fees.

Under RAP 18.1, we may award reasonable attorney fees on appeal where authorized by "applicable law." RCW 4.84.250 and .290 allow for an award of reasonable attorney fees on appeal to a prevailing party. RCW 18.27.040(6) likewise allows for an award of reasonable fees on appeal to a prevailing party. *See Cosmo. Eng'g Grp., Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 307, 149 P.3d 666 (2006). ACIC, however, has not prevailed on appeal. An award of reasonable appellate attorney fees under these provisions is therefore not appropriate.

An award of fees is also inappropriate under the terms of the stipulated judgment, which reserved the Ingrams' right to appeal the order of summary judgment. Our opinion reverses the order of summary judgment, meaning that ACIC no longer has a judgment to enforce.

No. 44971-4-II

CONCLUSION

The trial court's order granting summary judgment in favor of ACIC is reversed.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.

Bjorgen, J.

We concur:

Johanson, C.J.

Melnick, J.

12